# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID LYONS, | ) | |
| | ) | Civil Action No. 3: 12-cv-00182 |
| Plaintiff, | ) | |
| | ) | United States Judge Kim R. Gibson |
| v. | ) | |
| | ) | United States Magistrate Judge |
| CAROL ICKES; *et al*, | ) | Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 57) be granted.

**II.  REPORT**

    A.    *Relevant and Material Facts*

Plaintiff is currently housed, and at all times pertinent to this lawsuit has been housed, at SCI-Somerset. On September 8, 2010, Plaintiff fractured his left ankle while climbing down from the top bunk inside his cell. Following the injury, Plaintiff was seen by an orthopedic surgeon who determined that surgery was needed to repair his fractured ankle. Due to his injury, Plaintiff remained in the SCI-Somerset infirmary and/or Somerset Hospital from September 8, 2010, until November 17, 2010, when he was returned to the general population / housing unit.

While in the infirmary, Plaintiff filed Grievance No. 337516, dated October 1, 2010. A response was issued on October 18, 2010, denying Plaintiff's grievance. Plaintiff did not appeal this decision to the Superintendent or to final review.

On August 22, 2011, approximately nine (9) months after Plaintiff returned to the general population / housing unit, Plaintiff filed Grievance No. 378042 claiming that, while in the

1

infirmary, he had been denied the necessary forms to appeal Grievance No. 337516 to the superintendent.[1] Grievance No. 378042 was denied on September 9, 2011. Plaintiff appealed to the Secretary's Office of Inmate Grievance & Appeals without first appealing to the Superintendent. On November 1, 2011, Grievance No. 378042 was dismissed due to Plaintiff's failure to appeal to the superintendent.

Plaintiff initiated this lawsuit on August 29, 2012, by filing a Motion for Leave to Proceed *in forma pauperis* (ECF No. 1). The Complaint, filed *pro se*, named eight (8) defendants: Carole Ickes; C/O Flick; Doctor Benner; Denise Thomas R.N., CHRA; SCI-Somerset Medical Department; Doctor Schmidt; Doctor Grier; and the Department of Corrections. Plaintiff claims, *inter alia,* that he should have never been placed on a top bunk, and that his placement on the top bunk was a violation of his constitutional rights.

On May 3, 2013, Carlyle J. Engel, Esquire, entered his appearance as counsel for Plaintiff. (ECF No. 45.) On May 13, 2013, Plaintiff moved, pursuant to Federal Rule of Civil Procedure 41, to voluntarily dismiss Defendants Dr. Benner, Denise Thomas, Dr. Schmidt, and Dr. Grier. Said request was granted and, as such, the remaining defendants in this action are Carol Ickes, Corrections Officer Flick, and the Department of Corrections.

Defendants have filed the instant motion for summary judgment, and accompanying brief in support, on the sole issue of exhaustion (ECF Nos. 57 & 58), to which Plaintiff has responded in opposition (ECF No. 64). The issues have been fully briefed and the factual record has been thoroughly developed via Defendants' Concise Statement of Material Facts (ECF No. 59), the Appendix to Defendants' Concise Statement of Material Facts (ECF No. 60), Plaintiff's Responsive Statement of Facts (ECF No. 63), the Appendix to Plaintiff's Responsive Statement

---

[1] Plaintiff contends that Grievance No. 378043 is not relevant to this law suit, as it concerns events which did not give rise to his injury.

of Facts (ECF No. 65), and Defendants' Reply and Appendix to Plaintiff's Responsive Statement (ECF Nos. 66 and 67, respectively). The matter is ripe for disposition.

> B. *Failure to Exhaust Administrative Remedies*

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to exhaust all administrative remedies available to him under DC-ADM 804.

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the Act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *Id.*

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective. . . appeal." *Id.* at 83*; see also Spruill v. Gillis,* 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ . . . ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See, e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000). Significantly, section 1997e(a) contains no futility exception that would excuse a failure to exhaust. *Id.* at 741 n. 6.

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, courts have recognized a clear

"reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris,* 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

C.  *Discussion*

The Pennsylvania Department of Corrections maintains a grievance system which offers a three-phase grievance and appeals procedure that provides inmates with an avenue to seek

5

review of problems that may arise during the course of their confinement. *See* DC–ADM 804. First, an inmate may submit a grievance to the inmate counselor within fifteen (15) working days of the events giving rise to the grievance.[2] The inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." *Spruill v. Gillis,* 372 F.3d at 232-33. Within fifteen (15) working days, the grievance coordinator transmits a decision to the inmate. Next, if the inmate is dissatisfied with the disposition of the grievance, he may, within fifteen (15) days of the grievance coordinator's decision, appeal to the Facility Manager/Superintendent for a second level of review, who must provide a decision within another fifteen (15) working days. *Id.* at 232. Finally, an inmate may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the decision of the Facility Manager/Superintendent, and the Secretary's Office has thirty (30) working days in which to issue a decision. *Id.*

An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

Defendants maintain that Plaintiff did not properly exhaust his administrative remedies and has, thus, procedurally defaulted on his claims. In response, Plaintiff argues that summary judgment should be denied as there exists a genuine issue of material fact regarding whether Plaintiff properly exhausted administrative remedies and/or was hindered from doing so.

---

[2] The policy was last amended on December 1, 2010. The previous version of the policy, which was in effect during the time Plaintiff was in the infirmary, only allowed ten working days to appeal an adverse initial review decision to the facility manager.

The PLRA mandates that inmates "properly" exhaust their administrative remedies before filing suit in federal court and that demands compliance with an agency's deadlines and procedural rules. *Woodford*, 548 U.S. at 90-93. It is clear from the record that Plaintiff did not do so in this case. The Court recognizes that under certain circumstances, administrative remedies may not be effectively "available," preventing a timely pursuit of the prison grievance process. *See, e.g., Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedy unavailable where prison security officials told inmate to wait to file grievance until after the investigation was complete); *Camp v. Brenan*, 219 F.3d 279, 281 (3d Cir. 2000) (administrative remedy unavailable where inmate put on grievance restriction).

However, in this case, the record simply does not support a finding that the administrative process was not available to Plaintiff. The Court finds that for a number of reasons Plaintiff has not set forth a compelling reason to excuse compliance with the exhaustion requirement.

First, Plaintiff has failed to provide documentation supporting his assertions that he was denied access to the necessary appeal materials while housed in the infirmary. He first directs the Court's attention to his Request to Staff Member, dated February 8, 2011, in which he asserts for the first time, that he did not have access to an inmate handbook during his stay in the infirmary. *See* Pl's Appendix, Exh. C (ECF No. 65-3). Defendants contend that Plaintiff never filed this document with the institution. Giving Plaintiff the benefit of the doubt as the non-moving party, and assuming *arguendo*, that the document had been properly filed with the institution, the undisputed fact remains that this document was submitted almost four (4) months after Plaintiff's Grievance was denied and nearly three (3) months after Plaintiff's release from the infirmary. Plaintiff does not explain his delay in submitting this request.

Next, Plaintiff relies upon his Request to Staff Member, dated July 1, 2011, in which he again asserts that he did not have access to an inmate handbook during his stay in the infirmary and states that he was told "by a C.O. that it was too late to file an appeal." Pl's Appendix, Exh. D (ECF No. 65-4). Defendants contend this document was also never filed with the institution. Again, giving Plaintiff the benefit of the doubt as the non-moving party, and assuming *arguendo*, that the document had been properly filed with the institution, the document remains problematic because it was submitted nine (9) months after Plaintiff's Grievance was denied and nearly eight (8) months after Plaintiff's release from the infirmary. Similarly, Plaintiff offers no explanation for the delay in submitting this request.

In "rare circumstances," *Ramos v. Smith*, No. 04–0249, 2005 WL 3054291, at *5 (E.D. Pa. Nov.14, 2005) (Surrick, J.), interference by prison officials "with an inmate's attempts at exhaustion impact the availability of the administrative remedy process." *Rye v. Erie County Prison*, 689 F.Supp.2d 770, 773 (W.D. Pa. 2009) (McLaughlin, J.) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)). The Court of Appeals for the Third Circuit has held that conduct by prison officials that "thwart[s]" a prisoner's efforts to file grievances may render those procedures "not available" to a prisoner. *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (finding grievance process unavailable where security officials allegedly directed a prisoner "to wait for the termination of the investigation before commencing a formal claim," contrary to prison regulations, and "never informed [him] that the investigation was completed"); *see also Mitchell*, 318 F.3d at 529 (finding that prisoner lacked " 'available' administrative remedies" after officials denied access to necessary grievance forms); *In re Bayside Prison Litigation*, 351 Fed. App'x 679, 683 (3d Cir. 2009) (finding plaintiff "introduced evidence sufficient for a reasonable jury to conclude that [defendants] interfered with his access to the grievance system

. . . by employing threats that would have deterred an 'individual of ordinary firmness' from filing a complaint").

In the July 2011 Request to Staff Member, Plaintiff claims, *inter alia,* that a corrections officer misled him by telling him that it was too late to file an appeal. Notably, however, Plaintiff does not assert that this correctional officer actively prevented him from appealing the grievance denial nor does he claim that the correctional officer stood in the way of his efforts to appeal his grievance.

Third, Plaintiff relies upon his August 9, 2011, Request to Staff Member, in which he states that he was not able to file an appeal until he was released from the infirmary. On August 29, 2011, Plaintiff's request was denied, as follows:

> Mr. Lyons,
>
> You indicate that you filed a grievance, which by institution records was dated Oct. 1, 2010 and subsequently answered on Oct 18, 2010. You claim you were not able to file an appeal until you were released from the infirmary in Nov. 2010. It is your responsibility to adhere to the time schedule for filing an appeal to the Supt. Since you filed the grievance while in the infirmary I find no merit in your claim of being unable to an (sic) appeal to the Supt prior to the time frame expiring. Waiting until August 2011 to attempt to have an appeal addressed to a grievance response 10 months earlier is without a doubt way outside of the time frame. Your request is therefore denied.

Pl's Appendix, Exh. F (ECF No. 65-6).

Defendants have submitted the Affidavit of Heidi Sroka, Assistant to the Superintendent, Facility Grievance Coordinator, in which she states that "reasonable accommodations would have been made so that inmate Lyons would have been permitted to appeal his grievance (#337516) upon his return from the infirmary." Defs' Appx, Exh. 67-2, at ¶ 2.

DC-ADM 804, Section 2, Appeals - Inmate Responsibilities, clearly provides, in pertinent part, that:

9

> An exception to the 15 day filing requirement will be made only when the inmate notifies the Facility Manager / designee of the reason for the delay and it is determined that the delay in filing was caused by: . . . (3) Authorized Temporary Absence (ATA) for an extended period . . . .[3]

DC-ADM 804, Section 2 - Appeals, Paragraph A(2)(c)(3). Plaintiff offers no explanation why he never notified the Facility Manager / designee that he needed an extended period of time in which to file his appeal.

Although Plaintiff's opposition papers claim that "Plaintiff made multiple requests to staff for assistance in obtaining an appeal, often receiving no response or finding his claims dismissed as meritless," Pl's Br. at 2, it is significant that each of the documents upon which Plaintiff relies is dated well after Plaintiff was returned to the general population / housing unit. Plaintiff has submitted no proof evidencing any attempt to secure a grievance appeal form or any attempts to file an appeal during his time in the infirmary.

As discussed *supra*, an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis,* 49 F. App'x at 368. The summary judgment record fails to demonstrate that Plaintiff was either misled or that there was some extraordinary reason he was prevented from exhausting his administrative remedies. The record is void of any explanation as to why Plaintiff waited until February 8, 2011, nearly three (3) months after Plaintiff's release from the infirmary, before he first attempted to file an appeal.

The undisputed summary judgment record demonstrates that Plaintiff did not exhaust his administrative remedies. Further, assuming *arguendo* that administrative remedies were not available to Plaintiff while he was in the infirmary, Plaintiff has failed to establish that he diligently pursued his appeal once he was transferred out of the infirmary.

---

[3] Identical language is found in Section B - Appeal to Final Review - Paragraph 1(c).

For all these reasons, the Court recommends that the motion for summary judgment filed by Defendants be granted as to Plaintiff's federal claims.

D.  *State Negligence Claims*

Plaintiff also brings state law negligence claims against Defendant Ickes and the Department of Corrections.

Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals has stated that "the district court must decline the . . . state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). *See also Spencer v. Bush*, No. 12-3965, 2013 WL 5696510 at *3 (3d Cir. Oct. 21, 2013) (*citing Hedges,* 204 F.3d at 123).

Because it is recommended that summary judgment be granted as to all Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence claims. *Angst v. Mack Trucks, Inc*., 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or

transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

**III.    Conclusion**

For the reasons stated above, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted as to all federal claims on the ground that Plaintiff did not properly exhaust his administrative remedies pursuant to the PLRA.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed until **December 6, 2013**, to file Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

s/ *Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Dated:  November 19, 2013

cc:    Carlyle J. Engel, Esquire
       Swensen, Perer & Kontos
       Email: cjengel@spkpowerlaw.com

       Yana L. Chudnovsky
       Office of Attorney General
       Email: ychudnovsky@attorneygeneral.gov